UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UZMA SHAH et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES CITIZENSHIP<br>& IMMIGRATION SERVICES, et al.,<br><br>Defendants. | Case No. C18-1345RSM<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on the Parties' cross-motions for Summary Judgment. Dkts. #23 and #29. Plaintiffs Uzma Shah and her husband Pratap Sundavadara bring this action to challenge Defendant United States Citizenship and Immigration Services ("USCIS")'s finding that their marriage was not bona fide and was entered into for immigration purposes, ultimately resulting in the denial of Plaintiff Shah's I-130 visa petition. Plaintiffs filed this action challenging that decision as arbitrary and capricious under the Administrative Procedures Act ("APA"). For the reasons stated below, the Court GRANTS Defendants' Motion and DENIES Plaintiffs' Motion.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 1

## II.  BACKGROUND

Plaintiffs seek judicial review of USCIS's September 30, 2017, denial of the I-130 Petition for Alien Relative that Plaintiff Shah filed on October 28, 2015, on behalf of Plaintiff Sundavadara. Dkt. #1, ¶¶ 1.1, 8.2.  Plaintiff Shah is a naturalized United States citizen who immigrated from Pakistan.  Dkt. #30, Declaration of Michelle R. Lambert ("Lambert Decl."), Ex. 1.  Plaintiff Sundavadara is a citizen of India.  *Id.*  Shah and Sundavadara married on August 18, 2015, in King County, Washington.  *Id.*  By filing the I-130 Petition, Plaintiff Shah sought to qualify Plaintiff Sundavadara as her spouse under section 201(b) of the Immigration and Nationality Act ("INA").  *Id.*  Plaintiff Sundavadara also filed a Form I-485 Application to Register Permanent Residence or Adjust Status.  Dkt. #1 at ¶ 8.2.

In support of the I-130 Petition, Plaintiff Shah provided documentary evidence of her marriage to Plaintiff Sundavadara.  This included their birth certificates, divorce decrees from prior spouses, lease agreement, utility bills, photos, marriage certificate, bank statements, personal correspondence, and other documents.  Lambert Decl., Ex. 2.  Seven months later, USCIS scheduled the couple for an interview at the Seattle Field Office.

On May 2, 2016, Plaintiffs appeared for the interview with an immigration Services Officer.  Lambert Decl., Ex. 3.  At the interview, Plaintiffs provided testimony under oath and provided documentary evidence to establish their marriage.  Lambert Decl., Ex. 4 at 1.  The Services Officer interviewed Plaintiffs separately concerning the bona fides of their marriage.  *Id.*; *see also* Lambert Decl., Ex. 5.

USCIS maintains that Plaintiffs testified inconsistently with each other or with their documentary evidence.  Defendants state:

> For example, Plaintiff Sundavadara stated that he proposed marriage in a restaurant in Federal Way, yet Plaintiff Shah claimed

that he proposed to her by email prior to returning to Seattle. [Lambert Decl.,] Ex. 4, Decision, at 2. As for their living arrangements, on their G-325A, biographic information forms, Plaintiffs both claimed to have moved in together in August 2015, under a jointly signed lease. *Id*., at 3. However, at their interviews, they both testified that only Plaintiff Sundavadara lived at the listed address and that Plaintiff Shah continued to live in Federal Way with her children. *Id*. When asked, separately, about activities that Plaintiffs engaged in together, neither provided a detailed response. *Id*. When specifically asked what Plaintiffs did during their last day off, Plaintiffs' stories contradicted one another. *Id*.

Dkt. #29 at 4–5. Because of these discrepancies, the case continued for additional review. *Id*.

On August 9, 2016, at 7:15 in the morning, two immigration officers conducted a site visit. Dkt #30-4 at 4. The officers advised Plaintiff Shah that they were at the home to talk about Plaintiffs' pending applications with USCIS. *Id*. Ms. Shah greeted the officers at the door, went back inside for a few minutes, then admitted the officers. *Id*. For security reasons, the officers asked how many people were in the residence at that time. *Id*. Ms. Shah stated three—herself and her two daughters, who were sleeping. *Id*. The officers asked where Plaintiff Sundavadara was currently, and she stated that he was at work at Lucky Casino (this is later to be corrected to the Emerald Queen Casino). Dkt #30-4 at 4. When asked to see Plaintiff Sundavadara's mail, Plaintiff Shah stated that it was in her car, and was unable to show the officers any mail currently in the home belonging to him because she tends to throw it away after he looks at it. *Id.*

The officers repeatedly asked for evidence of Mr. Sundavadara's possessions being in the house—clothes, etc. They observed only female clothes being in the closet, and only a few t-shirts, shorts, or sweatpants that could be male clothes. *Id*. When asked to see Mr. Sundavadara's razor, Plaintiff Shah produced a pink razor, which she claimed to be his. *Id*. Plaintiff Shah claimed there was no shaving cream because Mr. Sundavadara shaves with soap.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 3

When asked where Mr. Sundavadara keeps his underwear and socks, Ms. Shah said she would have to look in the laundry, found none in the laundry, then stated that Mr. Sundavadara does not wear underwear. *Id*.

The officers then checked two other bedrooms, one which obviously belonged to one of the daughters and the other which was locked. At first Ms. Shah said that this bedroom belonged to her other daughter, but then that daughter walked in from the outside of the house. *Id*. Ms. Shah then instructed the occupant of the room to open the locked door, and a man named Syed Ali was revealed. This man said he was the father of the two girls and Ms. Shah's ex-husband. *Id*. Although Ms. Shah and Mr. Ali stated that he was just "lying down and resting," the officers believed he had spent the night at the house. *Id*. As stated by USCIS: "[t]he officers advised Mr. Ali that his car is cold, and that combined with him being in a bedroom sleeping in the home without socks while his daughters were also still asleep, and appearing to be just waking up himself, indicates that he may have been at the residence for a while, possibly overnight. Mr. Ali stated that his car does not heat up, even when he drives to Portland, but provided no explanation or clarification to the timeline of events in question that morning." *Id*. at 5.[1]

On March 8, 2017, USCIS issued a notice of Intent to Deny ("NOID") advising that evidence supporting the petition was insufficient and giving Plaintiffs 30 days to respond. Dkt #30-3. Plaintiffs submitted additional documents, such as bills, mail, pictures, and fertility records. However, on September 30, 2017, USCIS determined that these records did not

---

[1] Although these facts are drawn from USCIS records, Plaintiffs do not contest the vast majority of them in briefing. Plaintiffs do submit evidence that Mr. Ali's vehicle engine "was of the type that the engine does not heat." Dkt. #23 at 8 (citing Dkt. #23-1 at 26, March 19, 2017, invoice from Honda dealership stating "the bonnet and the grill never heat up because it is desined [sic] to have air flow and insulation to keep it cool."). Plaintiffs do submit statements from Ms. Shah's daughters where they state that Mr. Sundavadara is in a loving relationship with their mother, that Mr. Ali was just visiting and that their mother did not lie to the USCIS officers. Dkt. #23-1 at 17–24. The Court has reviewed these statements and finds nothing to raise a question of fact as to any of the specific facts above.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 4

overcome the evidence from the site visit and reached its decision denying the I-130 petition. Dkt. #30-4 at 5.

On October 31, 2017, Plaintiff Shah appealed USCIS's denial of the I-130 Petition to the BIA. Dkt. #1 at ¶ 8.7. On June 26, 2018, the BIA issued its decision dismissing the appeal, finding that "the evidence is not sufficient to overcome the discrepancies identified during the parties' marriage interview before the USCIS and the factual findings regarding the site visit conducted at the alleged marital home." Lambert Decl., Ex. 6, at 1.

The BIA's decision described the evidence submitted in response to the NOID, which included the fertility records. *Id*. It acknowledged the remaining documentary evidence submitted by Plaintiffs to support a bona fide marriage. *Id*. Specifically, the decision took notice of Plaintiff Shah's pregnancy and stated that this was a positive consideration, but it was not dispositive. *Id*. The decision stated, "[t]he adverse findings of the marital interview and the site visit are entitled to significant weight and they have not been adequately addressed by [Plaintiff Shah]." *Id*. Based on the totality of the circumstances presented and the evidence of record, the BIA dismissed the appeal. *Id*. This lawsuit followed.

### III. DISCUSSION

#### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*

*Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The APA provides for judicial review of final agency decisions. 5 U.S.C. §§ 702, 706. Courts routinely resolve APA challenges to an agency's administrative decision by summary judgment. *Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1481 (9th Cir. 1994). However, in cases involving review of a final agency action under the APA, courts do not utilize the standard analysis under Rule 56 for determining whether a genuine issue of material fact exists "because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citations omitted); *see also Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985). The Court "is not required to resolve any facts in a review of an administrative proceeding;" rather, summary judgment serves as the mechanism for deciding, as a matter of law, whether agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *Sierra Club*, 459 F. Supp. 2d at 90 (citations omitted). An agency's factual findings are reviewed for "substantial evidence," meaning that they should not be disturbed "unless the evidence

presented would compel a reasonable finder of fact to reach a contrary result." *Herrera v. USCIS*, 571 F.3d 881, 885 (9th Cir. 2009) (citation and internal quotation marks omitted).

The APA provides that a court "shall. . . hold unlawful and set aside agency action. . . found to be. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To satisfy this standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125, 195 L. Ed. 2d 382 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)). APA review of the agency's action is generally limited to "the record that was before the agency at the time the challenged decision was made." *Greater Yellowstone Coal, Inc. v. Servheen*, 665 F.3d 1015, 1024 n.2 (9th Cir. 2011).

"[I]f an agency relies on two grounds for a decision, a court may sustain it if one is valid and if the agency would clearly have acted on that ground even if the other were unavailable." *Syracuse Peace Council v. FCC*, 867 F.2d 654, 657, 276 U.S. App. D.C. 38 (D.C. Cir. 1989). However, because "a reviewing court. . . must judge the propriety of [agency] action solely by the grounds invoked by the agency," post hoc explanations that the agency did not articulate when it acted are insufficient. *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).

**B. Analysis**

As previously stated, Plaintiff Shah filed an I-130 petition to obtain immediate relative immigration status for Plaintiff Sundavadara as a spouse. A marriage entered into "for the purpose of evading the immigration laws" does not qualify. 8 U.S.C. § 1154(c)(2); *Vasquez v.*

*Holder*, 602 F.3d 1003, 1014 (9th Cir. 2010). "The central question in determining whether an alien entered into her marriage in good faith, and not for the purpose of procuring an immigration benefit, . . . [remains] whether she and [her spouse] intended to establish a life together at the time they were married." *Vasquez*, 602 F.3d at 1014 (internal quotation marks and citation omitted).

As the applicant for an immigration benefit, Plaintiff Shah bore the burden to prove a bona fide marriage with Plaintiff Sundavadara throughout the administrative proceedings. 8 C.F.R. § 103.2(b)(1); *Avitan v. Holder*, 10-cv-3288-JCS, 2011 U.S. Dist. LEXIS 12310, at *7 (N.D. Cal. Feb. 8, 2011). The burden of proof remains with the applicant seeking a visa throughout the process because approval of a visa petition "is merely a preliminary step in the visa application process." *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984). Plaintiff Shah had to "'resolve the inconsistencies'" in the record "'by independent objective evidence.'" *Love Korean*, 549 F.3d 749, 754 (9th Cir. 2008) (quoting *Matter of Ho*, 19 I. & N. Dec. 582, 591-92 (BIA 1988)). Under this standard of proof, "[a]ttempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice." *Id*.

On the other hand, USCIS must prove by "substantial and probative evidence" that the petitioners married to evade immigration laws for an I-130 to be rejected on that basis. *Damon v. Ashcroft*, 360 F.3d 1084, 1088 (9th Cir. 2004); *Avitan*, 2011 U.S. Dist. LEXIS 12310 at *7. "'Substantial evidence' means more than a mere scintilla but less than a preponderance; it means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Baria v. Reno*, 94 F.3d 1335, 1340 (9th Cir. 1996) (citing Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

In this case one bad site visit has doomed Plaintiffs' I-130 petition. The pertinent facts of that visit—what was said and observed—are not genuinely in dispute. Ms. Shah's living arrangement (or visitation arrangement) with Mr. Ali, the father of her children, is less damning to her I-130 petition than her attempts to conceal the truth of who was in the house, why he was there, and why her husband was not. This site visit, prompted by prior inconsistencies in statements from the Plaintiffs, together with the subsequent analysis of USCIS, add up to substantial and probative evidence that petitioners married to evade immigration laws. Whether or not the other evidence submitted by Plaintiffs—*e.g.* her fertility treatment records—would have persuaded this Court to come to a different outcome is not the valid standard. The Court agrees with Defendants that the prior decisions by USCIS were reasonable given the facts available at the time, not arbitrary and capricious, and that, under the deferential standards of APA review listed above, this Court should not disturb USCIS's conclusions.

## IV. CONCLUSION

Having considered the Motions of the parties and the entire record, the Court hereby finds and ORDERS:

1) Plaintiffs' Motion for Summary Judgment, Dkt. #23, is DENIED.

2) Defendants' Cross Motion for Summary Judgment, Dkt. #29, is GRANTED. Plaintiffs' claims are DISMISSED.

3) This case is CLOSED.

DATED this 17 day of December 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE